UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN J. RICHARDSON,                    :        CIVIL ACTION NO. 3:CV-11-0407
                                        :
                Petitioner              :        (Judge Nealon)
                                        :
        v.                              :        **FILED**
                                        :        **SCRANTON**
                                        :
LACKAWANNA COUNTY DISTRICT              :        NOV 1 5 2012
ATTORNEY, et al.,                       :
                                        :        PER _____
                Respondents             :        DEPUTY CLERK

### MEMORANDUM

Petitioner, Brian J. Richardson, filed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  He attacks a conviction and sentence imposed by the Court of

Common Pleas for Lackawanna County, Pennsylvania. (Doc. 1).  For the reasons that follow, the

petition will denied.

I.      **Background**

The following background has been extracted from the Pennsylvania Superior Court's

December 8, 2010 Opinion affirming Richardson's judgment of sentence.

> On January10, 2005, Appellant pled guilty to simple assault and false
> imprisonment, and the trial court sentenced him to six months to twenty-three
> months in prison for simple assault and twenty-four months probation for false
> imprisonment.  the sentences to run consecutively.
>
> On October 6, 2005, Appellant, who was now on parole, was charged with a
> parole violation and he was recommitted to the county prison.  However, on
> December 12, 2005, since the criminal charges lodged against Appellant had
> been disposed of in central court by virtue of a summary offense plea, the
> probation officer no longer desired to pursue a Gagnon II hearing.  Thus,
> Appellant was released from prison to his original conditions of parole
> supervision.
>
> On July 12, 2006, Appellant was charged with a parole violation, and on

September 25, 2006, he was remanded on the original sentence of six months to twenty-three months with no credit for street time. The court indicated the "new effective date of sentence is October 25, 2005 and it will expire on September 25, 2007." Moreover, the court indicated that Appellant's "probation on count 2 will remain in effect and will run consecutive to the parole violation sentence. The new maximum date is September 25, 2009. The defendant will be considered for furlough to the Salvation Army Treatment."

On October 20, 2006, the trial court indicated that Appellant was accepted into the residential treatment at the Salvation Army in Scranton, PA, and Appellant was released on furlough from the county prison to the Salvation Army on October 23, 2006. The trial court specifically indicated that "Offender is to abide by all conditions of the Lackawanna County Prison throughout the period of the furlough and shall return to the Lackawanna County Prison upon discharge from the Salvation Army. Failure to return will result in charges of Escape." On August 7, 2007, Appellant was placed on parole.

On September 2, 2008, Appellant was charged with violating a condition of his probation; however, the *capias* was rescinded on October 6, 2008. On January 22, 2009, Appellant was charged with violating a condition of his probation; however, the charges were withdrawn by the probation officer on January 30, 2009.

On October 8, 2009, Appellant was charged with violating three conditions of his probation, including failing to report to his probation officer, changing his residence without prior approval from his probation officer, and failing to complete anger management classes and the domestic violence program. On November 18, 2009, Appellant proceeded to a Gagnon II hearing, at which he stipulated to violating his probation in that he changed his residence without prior approval of his probation officer. Appellant's probation was revoked, and he was remanded to the county prison. Sentencing was deferred.

On February 8, 2010, Appellant filed a *pro se writ of habeas corpus*, alleging that he was being detained for a violation of a probationary sentence which had expired. On October 28, 2009, the trial court indicated it was forwarding the *pro se writ of habeas corpus* to Appellant's attorney.

On March 11, 2010, Appellant filed a counseled motion seeking to withdraw his admission to the probation violation. Specifically, Appellant alleged that his probation ended on September 25, 2009, and therefore, Appellant should not have been charged with a violation of his probation on October 8, 2009. On March 19, 2010, Appellant proceeded to a sentencing hearing, at which the

2

trial court denied Appellant's motion to withdraw his admission.  During the
hearing, Appellant admitted that he absconded from the Salvation Army and
changed his address without notifying his probation officer approximately three
months before his probation ended because he wanted to better his position
financially.  N.T. 3/19/10 at 10.  The trial court, without the benefit of a pre-
sentence investigation report, N.T. 3/19/10 at 8, then sentenced Appellant to
one to two years in prison for false imprisonment and one to two years in
prison for simple assault, the sentences to run consecutively.  The trial court
gave Appellant no credit for street time.

On March 29, 2010, Appellant filed a petition for reconsideration of his
sentence in which the issues presented were (1) whether the trial court erred in
failing to grant Appellant's counseled motion to withdraw his admission to the
probation violation and (2) "[Appellant] is a product of particular
circumstances and conditions of environment but that these matters were not
fully and completely expressed in a pre-sentence report prepared by the
Lackawanna County Probation Office."  On March 30, 2010, the trial court
denied Appellant's motion for reconsideration, and on April 7, 2010, Appellant
filed a notice of appeal.  The trial court did not order Appellant to file a
Pa.R.A.P. 1925(b) statement.

(Doc. 14-5, Ex. E, Memorandum Opinion of the Superior Court of Pennsylvania dated December

8, 2010).

On appeal, Richardson raised the following six issues:

1.    Whether the lower court erred in revocating the Appellant's
      probation after his probationary sentence had expired.

2.    Whether the lower court erred when it imposed sentence without
      ordering a presentence investigation or giving reason for not
      doing so on the record.

3.    Whether there were sufficient grounds to revoke Appellant's
      probation in light of the fact that the proffered evidence was
      based upon hearsay testimony only.

4.    Whether the sentence imposed by the lower court was excessive
      in light of all the factors presented.

5.    Whether the lower court failed to articulate sufficient reasons
      for the sentence imposed.

6.      Whether the lower court violated the Appellant's Due Process
        rights by failing to conduct the requisite violation hearing within
        a reasonable time.

(Doc. 14-4, Ex. D, Brief of Appellant).

By Memorandum Order filed December 8, 2010, the Pennsylvania Superior Court

affirmed Petitioner's conviction and sentence.  (Doc. 14-5, Ex. E, Memorandum Opinion of the

Superior Court of Pennsylvania dated December 8, 2010).  No appeal to the Pennsylvania

Supreme Court was perfected.

On January 13, 2011, Richardson filed a pro se petition for relief under the Pennsylvania

Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541-9546.  See Commonwealth of Pa. v.

Richardson, CP-35, CR-0002218-2004, Criminal Docket Sheet).  On June 8, 2012, Richardson's

PCRA petition was dismissed without a hearing.  Id.  No appeal was filed.

On March 3, 2011, Petitioner filed the instant petition for writ of habeas corpus in which

he raises the following issues:

1.      Whether the lower court erred in revoking Petitioner's probation
        after the probationary term had expired.

2.      Whether the lower court erred when it imposed sentence without
        ordering a presentence investigation or giving reason for not
        doing so on the record.

(Doc. 9, Amended Petition).

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), and Mason v.

Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Petitioner that he could

either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and

heard as such, but lose his ability to file a second or successive petition, absent certification by the

4

court of appeals, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act ("AEDPA"). (Doc. 5). On March 28, 2011, Petitioner returned the notice of election, seeking leave of court to submit an amended petition. (Doc. 6). On April 7, 2011, Petitioner filed his amended petition. (Doc. 9). A Show Cause Order was issued on April 20, 2011, directing that the amended petition be responded to as filed. (Doc. 10).

On May 3, 2011, a response to the petition was filed. (Docs. 13, 14). On May 17, 2011, Petitioner filed a traverse. (Doc. 15). The petition is now ripe for disposition. For the reasons that follow, the petition for writ of habeas corpus will be denied.

## II.     Standards of Review Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A. Exhaustion

"A federal court may not grant a writ of habeas corpus unless (1) 'the applicant has exhausted the remedies available in the courts of the state', (2) no such state remedy is available or (3) available remedies are ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1)."

Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998). "The exhaustion requirement is satisfied

when the state courts have had an opportunity to pass upon and correct alleged constitutional

violations." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1230 (3d

Cir. 1992). The exhaustion requirement "is not a mere formality. It serves the interests of comity

between the federal and state systems by allowing the state an initial opportunity to determine and

correct any violations of a federal prisoner's federal rights." Gibson v. Scheidemantel, 805 F.2d

135, 138 (3d Cir. 1986). "Unless it would be patently futile to do so [state prisoners] must seek

relief in state court before filing a federal habeas petition...." Santana v. Fenton, 685 F.2d 71, 77

(3d Cir. 1982).

      The habeas corpus petitioner shoulders the burden of establishing exhaustion of state

court remedies. McMahon v. Fulcomer, 821 F.2d 934, 940 (3d Cir. 1987). The threshold inquiry

in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been

"fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971). "All claims

that a petitioner in state custody attempts to present to a federal court for habeas review must have

been fairly presented each level of the state courts." Lines v. Larkins, 208 F.3d 153, 159 (3d

Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Fair presentation requires that the "substantial

equivalent" of a petitioner's federal habeas claims be presented to the state courts. Lambert v.

Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). Here, Respondents concede that Petitioner has

exhausted his state court remedies. The merits of the claims will therefore be addressed.

### B. Merits

      "The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") modified a

federal habeas court's role in reviewing state prisoner applications in order to prevent federal

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).  Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).[1]  See generally Knowles v. Mirzayance, 556 U.S. 111, 119-21 (2009); Gattis v. Snyder, 278 F.3d 222, 234 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).  The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. Williams v. Taylor, 529 U.S. 362, 404-05 (2000).  As explained in Bell:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's

---

[1]Specifically, 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

application of clearly established federal law is objectively unreasonable ....

Bell, 535 U.S. at 694 (citations omitted).

In a recently announced decision, Renico v. Lett, --- U.S. ----, 130 S. Ct. 1855, 176 L.Ed.2d 678 (2010), the United States Supreme Court, quoting Williams, 529 U.S. 362, explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1862.  Therefore, a federal court may not grant habeas relief simply because it has concluded in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly.[2] Id.  Rather, the state court application must be objectively unreasonable.  Renico added that this distinction creates a substantially higher threshold for obtaining relief under § 2254 and imposes a highly deferential standard for evaluating state court decisions.  Id.  Simply put, "state-court decisions [must] be given the benefit of the doubt."  Id., quoting Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam).

This deferential standard of review applies to state court decisions on ineffective assistance of counsel claims.  Bell, 535 U.S. at 694-98.  Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. § 2254(e)(1).

## III.    Discussion

### 1.    Double Jeopardy

Petitioner asserts that double jeopardy considerations were raised when he "finished a sentence of probation on September 25, 2009, [and] was violated on October 14, 2009, some 19

---

[2]"Whether the trial judge was right or wrong is not the pertinent question under the AEDPA." Id. at 1865 n.3.

days after expiration, [and] then Petitioner was sentenced to one to two years on the same case # 04-cr-2218." (Doc. 9, Amended Petition at 6). Petitioner contends that this constituted a violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

The Fifth Amendment of the United States Constitution provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Double Jeopardy Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Baird, 63 F.3d 1213, 1215 (3d Cir. 1995). It is well-settled that the revocation of parole or probation and the corresponding imposition of confinement does not violate the Double Jeopardy Clause because "these criminal sanctions do not involve the increase of a final sentence, and ... defendant is aware at the original sentencing that a term of imprisonment later may be imposed ." Ralston v. Robinson, 454 U.S. 201, 220 n.14 (1981) (citing United States v. DiFrancesco, 449 U.S. 117, 137 (1980)).

The receipt of a probationary sentence is not a right guaranteed by the federal constitution, but is a privilege granted through legislative grace. Escoe v. Zerbst, 295 U.S. 490, 492-93 (1935); Berman v. United States, 302 U.S. 211, 213 (1937). The Pennsylvania Legislature has conferred upon the state courts the power, in its discretion, to place on probation a person found guilty of a criminal offense, except murder in the first degree.[3] The same courts are

_____

[3]

Act of August 6, 1941, P.L. 861, § 25, 61 P.S. § 331.25. This section provides in part:

empowered to revoke probation and impose any sentence which could have been pronounced originally whenever the probationer violates the terms of his probation.[4]  The revocation of a suspended sentence and probation followed by the imposition of a prison sentence does not subject a probationer to double jeopardy.  Cusatis v. Pennsylvania Bd. of Prob. & Parole, 1:12–CV–791, 2012 WL 3960317 (M.D. Pa. Aug. 8, 2012) (citing Pollard v. United States, 352 U.S. 354, 359-61 (1954) (holding that "[t]he revocation of a suspended sentence ... followed by the imposition of a prison sentence does not subject a [parolee] to double jeopardy"); Dunn v. California Dept. of Corrections, 401 F.2d 340, 342 (9th Cir. 1968); Thomas v. United States, 327 F.2d 795, 797 (10th Cir. 1964), cert. den., 377 U.S. 1000; U.S. ex rel. Sole v. Rundle, 435 F.2d 721, 724 (3d Cir. 1971); Commonwealth v. Vivian, 426 Pa. 192, 201, 231 A.2d 301 (1967)), adopted by, 1:12–CV–0791, 2012 WL 3945480 (M.D. Pa. Sept. 10, 2012)

Though the Constitution does not prohibit the discretionary exercise of the power to

---

> The court shall have the power, in its discretion, if it believes the character of the person and the circumstances of the case to be such that he is not likely again to engage in a course of criminal conduct and that the public good does not demand or require the imposition of a sentence of imprisonment, instead of imposing such sentence, to place the person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might he imposed.

See also Act of June 19, 1911, P.L. 1055, § 1, as amended, 19 P.S. § 1051, and Act of May 10, 1909, P.L. 495, § 1, 19 P.S. § 1081.

[4] Act of June 19, 1911, P.L. 1055, § 4. This statute does not require that the probation violation take place within the probationary period and the probation was revoked during such period.

revoke probation, this does not mean that such discretion may be absolute. There are the familiar limits. The exercise of that discretion is invalid whenever there is a showing that it was motivated by arbitrary or capricious reasons. See Burns v. United States, 287 U.S. 216, 222-23 (1932). The same holds true when that exercise is invidiously discriminatory or the conditions imposed are grossly unreasonable. Id.

The Pennsylvania Superior Court addressed Richardson's challenge to the revocation of his probation and found the following:

> Appellant's first contention is that the trial court erred in revoking Appellant's probation. Specifically, Appellant contends that his constitutional right against double jeopardy was violated when he was charged with a probation violation on October 8, 2009, which was approximately thirteen days after his probationary sentenced had expired on September 25, 2009.[5]
> In Commonwealth v. Smith, 860 A.2d 142 (Pa. Super. 2004),[6] this Court was presented with the issue of whether the Commonwealth may allege a

---

[5]We note that, when reviewing a sentence imposed following the revocation of probation:

> [O]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.

Commonwealth v. Ahmad, 961 A.2d 884, 888 (Pa. Super. 2008 ) (citations and quotations omitted).

[6]In Smith, just eighth days prior to the end of his probation, Smith's urine tested positive for opiate. Because his first test was non-specific, and the opiate "could have been anything," Smith's probation officer sent the urine sample to a laboratory for further analysis. Forty-seven days after Smith's probation expired, the laboratory reported the opiate was heroin, and two days later, the probation officer filed a capias alleging a violation, resulting in the revocation of Smith's probation. On appeal, this Court concluded it was not unconstitutional to sentence Smith for violating his probation.

11

violation of probation after the probationary sentence was expired. In concluding that the Commonwealth may do so in certain circumstances without violating a defendant's right against double jeopardy, we stated the following:

> Smith admits that generally there is no double jeopardy implication involved in revocation of probation situations. However, Smith argues that if protection from double jeopardy is to have any meaning, the allegation of a violation of a probationary term must be made during the probationary term. While we agree with Smith that there are circumstances where double jeopardy implications may prevent resentencing on a probation violation, we cannot agree that an absolute ban on post-probation violations is required, and do not find that the present circumstances require reversal.
>
> Because there is no case law directly on point, we will begin our analysis with a hypothetical situation. A probationer commits a murder three days before his probation expires. Our hypothetical probationer is not identified as the killer until after the probationary sentence has expired. Under the hard and fast rule proposed by Smith, this probationer could not be charged with a violation of probation, even though a violation was clearly committed. Because no allegation of a violation was filed during the probationary term, any attempt to prosecute the violation would itself represent a constitutional violations. We do not believe double jeopardy was designed to prevent such an occurrence, and find no support for the notion in any prior decisions. Therefore, we reject the absolute prohibition of such proceedings.
>
> We must then look to the particular circumstances of a case to determine the propriety of a post-probation allegation of violation. Looking at the above hypothetical situation, it is clear that the Commonwealth could not have filed an allegation of violation against the probationer because the Commonwealth was unaware of the identity of the murderer.
>
> ***
>
> [A]n examination of prior decisions is...informative. In Commonwealth v. James, 212 Pa. Super. 5, 240 A.2d 89 (1968), James challenged the authority of the court to revoke probation after the probationary period had expired. This was merely a challenge to the authority of the court and not a specific challenge to the constitutional prohibition against double jeopardy. Our Court stated:
>
> > Now that we are faced with this question after

more than fifty years' experience with probation,
its resolution does not appear difficult. [T]he
reasons which give the right to revoke probation
after the expiration of the probationary period for
a violation occurring near the end of the period, or
for a violation which, because of the defendant's
omission to report or other fault, does not come to
the court's attention until near the end of the
period or after its expiration.  The same reasons
hold when the probationary period is co-extensive
with the period of maximum legal sentence and
the court, even though acting promptly, cannot
make the necessary investigation and
determination and revoke the probation within the
probationary period which is also the legal
maximum.  It may do so thereafter if it acts with
reasonable promptness.

Id. at 90 (citations omitted).

Also:

Although probation may clearly be revoked after
the expiration of the probationary period, it is true
that in Commonwealth v. Holmes, [248 Pa.
Super.  552, 375 A.2d 379 (1977)], we noted that
'a certain amount of prejudice necessarily follows
from the mere fact of the expiration of the parole
period.'  This prejudice serves to render the delay
unreasonable, however, only when it cojoins with
other factors such as the utter lack of diligence by
county officials exhibited in Holmes.

Commonwealth v. Ruff, 272 Pa. Super. 50, 414 A.2d
663, 666 (1979)(citations omitted).

In determining that resentencing a defendant for a violation
of probation is not, in general, violative of double jeopardy, our
Court noted:

Consistent with the understanding that probation
is by nature a conditional sentence, our
Sentencing Code provides that '[u]pon revocation
the sentencing alternatives available to the court
shall be the same as were available at the time of
sentencing.'

***

13

Given the history cited above, we believe that the proper application of double jeopardy to probation recognizes that revocation of probation is not per se violative of double jeopardy, and given the conditional nature of the sentence, also acknowledges the need for the Commonwealth to investigate a possible violation to be as certain as possible that a violation has occurred.  This solution also represents a logical extension of prior case law.

To that end, we hold that the Commonwealth may, under certain circumstances, file allegations of a violation of probation even after the probationary term has expired.  The circumstances where this is allowable are limited to such instances where either the Commonwealth cannot ascertain that it was the probationer who committed another offense; the Commonwealth cannot show that the violation has actually occurred (as in the case before us); or the violation has occurred so late in the probationary term that the Commonwealth cannot actually file the proper paperwork in time.[7] In order to balance the defendant's right to be free from double jeopardy with the Commonwealth's right to enforce the conditional nature of the original sentence imposed, the Commonwealth must be given the opportunity to properly identify the violator and/or to properly verify that a violation has occurred.

As noted, a probationary sentence is conditional.  The latitude we now provide to the Commonwealth in initiating revocation proceedings is simply a practical recognition that it can take a reasonable amount of time to verify that the conditions of the original sentence have been met.  Thus, any reasonable delay in initiating revocation proceedings is not an impermissible double punishment.

***

We must emphasize that our holding today is not intended to be a carte blanche for the Commonwealth to initiate revocation proceedings whenever it feels like it.  Any delay in filing must be reasonable under the circumstances presented.  Where the identity of the violator and nature of the violation are known, the Commonwealth is ever under the obligation to proceed with due diligence.  If the Commonwealth fails in this obligation and does not seek to initiate revocation proceedings while the probationary term is still in effect, then double jeopardy

---

[7]These are three instances we can identify.  A case by case analysis may allow for other situations as well.

14

considerations may be implicated.[8]

Smith, 860 A.2d at 143-146 (citations and quotations omitted) (footnotes in original).

 Based on the aforementioned principles, we conclude the Commonwealth did not violate Appellant's double jeopardy rights in the case *sub judice*. Here, there is no dispute that Appellant violated his probation during his probationary term but was not charged with the probation violations until approximately thirteen days after his probationary term expired. However, we conclude that the Commonwealth acted with reasonable promptness under the circumstances. For instance, at the March 19, 2010 hearing, Appellant admitted that he absconded from the Salvation Army and changed his residence without notifying his probation officer approximately three months before the expiration of his probationary term. N.T. 3/19/10 at 10-11. The Assistant District Attorney explained the reasons for the delay in charging Appellant with the probation violations as follows:

> One of the reasons why there was a lateness in filing [the probation violations] was the fact that the Probation Department was not aware that he absconded from the Salvation Army and they had no known address for him way [sic] which was the reason [Appellant] had a requirement to tell [the probation officer] where he was living and [he] weren't [sic] there.
>
>    \*\*\*
>
> We are dealing with him noticing that there is – that the timing and the filing of the probation violation is after the supervision is apparently over, but he shouldn't be rewarded for absconding and that's basically what he's asking for the Court to do[.]
>
>    \*\*\*
>
> [The Court should look] on a case-by-case basis, and when you look at the circumstances of this case I think it's appropriate that once the Probation Department did find out that he absconded from the Salvation Army they filed the paperwork appropriately[.]
>
>    \*\*\*
>
> I think the fact that he absconded and the Commonwealth was unaware of the fact of that fact we shouldn't be – we are

---

[8] Our holding today does not affect prior case law regarding situations where the proceedings are initiated before the probationary terms expired, but the revocation hearing is not held until post-expiration.

15

prejudiced in not being able to file that – violation because we weren't aware of it.  When we discovered it we immediately filed even though it was three days afterwards, and pursuant to the case law that I submitted...the Court has allowed up to even 60 days past the supervision period to do it.  I think in this particular case it was three days after it was discovered, so I think we have every right to file the appropriate petition.

\*\*\*

I think there is also his admission, your Honor, was his failure to report his present whereabouts and his address, so the fact that [Appellant] failed to do that, it's not necessarily that he absconded from the Salvation Army, but he had also a responsibility to tell the probation department where he was going and he failed to do so, so that's actual[ly] the violation.

N.T. 3/19/10 at 2-7.

The trial court concluded the Commonwealth adequately demonstrated that is charged Appellant with the probation violations with reasonable promptness once the Commonwealth discovered the probation violations.  N.T. 3/19/10 at 7.  We find no abuse of discretion in this regard.

(Doc. 14-5, Ex. E, Memorandum Opinion of the Superior Court of Pennsylvania dated December 8, 2010 at 5-10).

The Court finds that Richardson has not shown that the state court's rejection of his challenge to his probation revocation represented an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Petitioner does not dispute the fact that, while on probation, he left the Salvation Army without authorization and never returned, thus violating the terms of his probation.  It is well established in Pennsylvania that escapees have no entitlement to credit for time spent on unauthorized absence from the appropriate authorities, even though they are not formally convicted of escape.  Poindexter v. Pa. Bd. of Prob. & Parole, 407 A.2d 480, 481 (Pa. Commw. 1979) (citing

16

Commonwealth ex rel. Goins v. Rundle, 192 A.2d 720 (Pa. 1963); Commonwealth ex rel.

McNeair v. Banmiller, 139 A.2d 633 (Pa. 1958); and Commonwealth ex rel. Tyson v. Day, 124

A.2d 426 (Pa. 1956)).

Moreover, Pennsylvania law provides that upon a finding that a violation of probation

has occurred, the sentencing court possesses the same sentencing alternatives that it had at the time

of the initial sentencing. See 42 Pa. C.S.A. § 9771(b). Because Petitioner failed to comply with

the conditions of his probation, the sentencing court was able to reconsider its original sentence.

This was not a violation of the Double Jeopardy clause.

### 2.      Pre-Sentence Investigation Report

Petitioner states that neither the "Commonwealth, nor trial court did a PSI on this

petitioner, yet, sentenced him to the max allowed by law, without either a PSI, nor reason for the

sentence." (Doc. 9, Amended Petition).  He concludes that "no PSI was ever done on either 04-cr-

2218 nor 09-cr-2696 yet petitioner was sentenced to the max" on the two charges. Id.

In addressing this issue, the Pennsylvania Superior Court found the following:

> In the case *sub judice*, Appellant was sentenced without a PSI, and the
> trial court did not state any reasons for dispensing with the PSI. However, we
> conclude the trial court elicited sufficient information to substitute for a PSI,
> thereby allowing a fully informed sentencing decision. See Flowers [950 A.2d
> 330 (Pa. Super. 2008)], supra; Goggins [748 A.2d 721, 728 (Pa. Super.
> 2000)], supra.  For instance, the record reveals the court considered the
> "workup sheet for the guideline range and a notice regarding the Gagnon II
> violation." N.T. 3/19/10 at 8. The trial court judge, who also sat for
> Appellant's guilty plea colloquy, imposed Appellant's original sentence, and
> decided sentenced for Appellant's previous violations of probation, was
> informed at length regarding Appellant's current violations of his probation.
> N.T. 3/19/10 at 2-7. Moreover, during the pre-sentence inquiry, the Assistant
> District Attorney read a letter from the victim, which provided as follows:

17

[Appellant], I have been with you for two years. In those two years, we had a beautiful daughter together. Your negative choices have affected no only your life, bu mine and our daughter's as well. Your constant denial of your alcohol and occasional drug use has destroyed you and your family. In two years you have abused me mentally, emotionally and physically.

The last incident which brings us here today is our child was in my arms as her father repeatedly struck me in the head. You have shown me just little to no respect or compassion you have for me.

[Our daughter] is no several months old and growing up so fast. You have missed so much because of your poor decisions. You need help, [Appellant], but you need to really want to help-you want the help for it to have any effect. I will pray for you and for you to find the strength to beat your inner demons.

N.T. 3/19/10 at 7-8.

Appellant's counsel informed the trial court that Appellant's "a guy who really is a decent human being except for the fact he gets intoxicated, we are here, and there may be some issues of domestic violence." N.T. 3/19/10 at 8-9. Appellant's counsel asked the court to fashion a sentence which would give Appellant "proper help" and specifically asked that the be re-admitted to the Salvation Army program. N.T. 3/19/10 at 9.

****

In Sentencing Appellant, the trial court specifically stated:

[Appellant], the hard part is that you have been, as you are well aware, provided with quite a bit of treatment and each time, I look back even in regard to '04, DATS, you were unsuccessfully discharged; '06 domestic violence program, unsuccessfully discharged; '06 domestic violence program, unsuccessfully discharged; 10-23-06 Salvation Army, Scranton, unsuccessfully discharged; 2-11-09 Clearbrook, therapeutically discharged for noncompliance; Salvation Army, '09, discharged unsuccessfully.

So, I mean you have been given many, many, many opportunities here, more so than almost anyone that comes into this Court. The problem is that you don't take the help that's being offered to you, you keep trying to drive your own bus instead of following the directions of others, and I don't know of anyone better than Mr. Thorn and the Salvation Army in

18

Binghamton to help with this. However, you have essentially
burnt that bridge by the fact that you now have had five
unsuccessfully discharged therapies, so the Court can't in good
conscience just say, "Well, let's take another shot at it."

It will be the sentence of the Court to the original count
of 04-cr-2218, that you be placed in the state correctional for
one to two years. In regard to the simple assault, consecutive
one to two. No credit for street time, and we will look to see if
that is made RRRI eligible so that you can participate in
treatment while you are there.

N.T. 3/19/10 at 11-12.

Based on the aforementioned, we conclude the trial court was very
familiar with Appellant and the circumstances of his case. The trial court
presided over Appellant's guilty plea hearing, sentencing, and issued
numerous orders in response to Appellant's violations of his probation. At the
most recent hearing, the victim's letter was introduced into court, and
Appellant had an opportunity to testify. Further, Appellant does not reference,
and we are unable to find, any place in the certified record where he requested
the trial court to obtain a PSI. The record reveals the trial court was
substantially made aware of the "essential and adequate" elements contained
in a PSI, and therefore, we find not merit to Appellant's issue.

(Doc. 14-5, Ex. E, Memorandum Opinion of the Superior Court of Pennsylvania dated December

8, 2010 at 15-18).

The Pennsylvania Superior Court deemed the trial court's inquiry into Petitioner's

background an adequate substitute for a formal pre-sentence investigation report. Id. This

decision does not offend any federal law.

Moreover, to the extent that Petitioner challenges the severity of his sentence, such a

claim is not grounds for federal habeas relief unless the sentence exceeds limits set by state law.

Townsend v. Burke, 334 U.S. 736, 741 (1948); U.S. ex rel. Sluder v. Brantley, 454 F.2d 1266,

1269 (7th Cir. 1972). See also Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir.

1984) (holding that a claim alleging a defect in a state court sentencing procedure does not present

a federal issue).  By his own admission, Petitioner's sentences fell within the statutory maximum allowable sentence.  Inasmuch as Petitioner's sentences fall within the state's statutory sentencing maximum, his sentence is not excessive.  Moreover, the trial court's failure to order a presentence investigation fails to establish a federal claim.  See Pringle 744 F.2d at 300; 28 U.S.C. § 2254(a). The petition for writ of habeas corpus will be denied.

A separate Order will be issued.

Dated: November 15, 2012

_____
**United States District Judge**